Our next case for oral argument is 21-1008, Silva v. United States. Mr. Weiss, are you ready to proceed? Yes, Your Honor. Good morning, Your Honors. May it please the Court. My name is Samuel Weiss and I represent the appellant, Mr. Anderson Silva. Mr. Silva has alleged that a correctional officer took him into his cell for the purpose of evading security cameras and beat him while he was in restraints. Mr. Silva has alleged that he requested medical care but never received it, and that when he filed the grievances and the complaint that led to this lawsuit, he was retaliated against by both the defendant, Mr. Shaw, as well as other staff at USP Florence, the federal supermax. The only question for this Court today is whether he has any remedy for this unconstitutional conduct. Let's go to that counsel because it looks to me like you're wanting us to create a new federal Bevins action. Am I correct? No, Your Honor. I think I am correct. Well, allow me to briefly make the case that you're not, and if you continue to disagree, we can move on to step two of the Abbasi analysis. So Abbasi laid out a two-step test on whether a Bivens remedy should exist. Step one is whether the context is new, and then step two, if the context is new, whether a Bivens should be extended to that new context. We argue that this is not a new context. May I ask, when you say this is not new, in your very opening sentence, you mentioned failure to give medical treatment to him. Is that before us now? No, it's not. Okay. Yes. Because that's established. That's an established Bivens claim, right? Yeah. Okay. Absolutely right, Your Honor. And I think we could come back to that a little bit if need be. But Abbasi laid out factors for when a context is new. It laid out six factors, and then sort of a catch-all of whether there's something unforeseeable that would cause Congress to hesitate. And on all six factors, and we can go through them, this context, which is an Eighth Amendment excessive force case, is upon all fours with Carlson. So they discussed the rank of the officers. This is a line-level officer. If there's the extent of judicial guidance, you have a generation of judicial guidance. The constitutional right at issue, this is an Eighth Amendment, cool and unusual punishment clause case. So on the generality or specificity of actions, this isn't challenging a policy. This is challenging one person, almost certainly violating BOP policy and federal law by beating a restrained prisoner. So Abbasi lays out the factors for when a court may consider a context new, and none of those factors point to this context being new. And then it also says, and to be fair, that list, it says it's not exhaustive and that there could be other circumstances that could lead a court to finding a new context. However, looking at the facts of those Supreme Court's last two Bivens cases, which are Abbasi itself and then Hernandez v. Mesa, demonstrates the sort of facts that it has in mind. Abbasi involved the roundup of persons of interest in the investigation of the attacks of September 11th, the largest terrorist attack in the history of the United States. Hernandez v. Mesa involved a border patrol agent who shot a gun across the border of the United States, killed a 12-year-old Mexican national, and created an international incident. This case simply could not be more different than those contexts. There is no analogous reason for Congress to hesitate in allowing a remedy here. Well, you speak of this being the same constitutional right because it's the same constitutional provision, the Eighth Amendment. Right, Your Honor. But these provisions provide lots of rights. The Fourth Amendment might be a search and seizure, it might be excessive force, it might be lots of different things. Here, Carlson was failure to provide medical care, right? Correct. Isn't that a lot different from excessive force against an inmate? Well, it can be. It certainly, as a factual matter, is different. The question that Abbasi asks this Court to answer is whether it's a meaningful difference for the sort of separation of powers analysis that we're supposed to do, or whether it's not a meaningful difference. And those factors are supposed to help lay that out. And I will say, I think, looking at Abbasi itself, Abbasi held, well, in the context of the warden and the deputy warden in Abbasi, it held, well, this is a different constitutional right from Carlson, even though it's somewhat analogous to it, because this involves the Fifth Amendment and the Eighth Amendment. There's no equivalent distinction here. One way or another, we're talking about that the right is the right to be free of cruel and unusual punishment. Now, there are different constitutional tests. Right to be free of what? Cruel and unusual punishment. Now, there are different constitutional tests. But, for example, your example, Judge Hart, was that, well, the medical care context, that's settled. But there are different constitutional tests there, too. For example, there's a different test if you are simply delayed medical care versus if you are prevented from obtaining medical care entirely. The other sort of black book 101, I think I combined like textbook and black letter law there, Bivens' claim is a Fourth Amendment search. But, of course, the test for a search is very different, whether it's in a car, whether it's in a public place, whether it's an incident to arrest. It's more than the test. The failure to give medical care is because this person can't seek care on his or her own. Absolutely. You're in custody, and it might be in a variety of different contexts. But that has nothing to do with the control of prisoners in a prison. That's why it's troublesome when medical care isn't provided, because there's not a good institutional reason not to give medical care. There are plenty of good reasons to restrain prisoners. Yes. And once we start in that area, we're intruding, I would submit, into the executive's authority to control the prison population, which requires the use of force against people, against prisoners. Absolutely. Why is that not conceptually very different? Even though it's still under the Eighth Amendment, it's conceptually very different from the denial of medical care. Right. I think it's an important question, and it goes to a different one of the Abbasi factors, which is the intrusiveness of the judiciary into other branches of government. I will say, I think it's an important question. I take your premise. It's almost entirely correct. I think it can be a little fuzzier than that, in the sense that incarcerated people often bring Eighth Amendment medical care claims against, for example, line-level staff who will not bring them to medical appointments on purported security grounds. Nonetheless, that can be an Eighth Amendment medical care case, and that case can succeed. So it's not that medical care has no relationship to institutional security, but not to the extent that excessive force does, which is totally fair. But I think I would point to the quotations that my friend on the other side pointed out in Whitley v. Albers. Whitley v. Albers, which is the 1986 case articulating the standard for excessive force. And defendant uses these quotations to say, the Supreme Court has said excessive force cases really risk involving the judiciary into matters of prison security that are really better left to prison administration officials. And that's true. However, the court in Whitley discussed those principles in the context of what the mens rea standard was going to be for an excessive force case. You know, if we're out on the street, a Fourth Amendment excessive force case is just whether force is objectively reasonable. In prison, because of those separation of powers concerns, because of that risk of intrusion into matters of institutional security, they held that the Eighth Amendment standard was the malicious and sadistic use of force for the very purpose of causing harm. So, which is to say that it resolved those separation of powers concerns by baking it into the substantive standard. And I think what makes this even more clear. Because it is totally dependent on the state of mind of the officer, that means that claim could be made any time force is used against a prisoner. Isn't that right? I don't think so, Your Honor. I think because of the deference given to prison officials, I think these cases are often screened out very early because there's the inference that, well, simply because that is such an incredibly high bar to meet. And another thing I'll note, which I think is very important. I'm sorry. Go ahead. Okay, this is important conceptually and it's important doctrinally, is that Carlson held, it addressed this question of would this involve too much intrusion into government, into prison affairs. And it held that the answer was no because defendants would be protected by qualified immunity. If we disagree with you on this first issue, do you lose? Do I lose? I don't believe so, Your Honor. And that brings me back to Judge Baldock's initial question, I suppose. If this would be an extension of Bivens, it would be the most modest of modest extensions of Bivens. He most critically, Mr. Silva has no remotely adequate alternative remedy. He does not have a federal tort claim act for being beat up in a prison? He likely does not. It's not in the record. He has not pursued a federal tort claim. Well, whose fault is that, counsel? The question is, does he or does he not have at least a claim under the federal tort claim to get away from a Bivens act? Well, I'll compare this. My question is very simple. Does he not have a federal tort claim act? I'm sorry if this is an unsatisfying answer, but he may or may not depending on Colorado law. Well, he may or may not, but he hasn't even tried that yet, right? As a pro se incarcerated plaintiff, that's true. He has not pursued that. I will note that in Hoffman, which defendant kindly pointed this court's attention to in a 28-J letter, there was supplemental briefing on whether he had access to an FDCA claim. That was failure to protect, but it was sort of the same egregious conduct. An officer paid prison staff to beat up the person. And the Department of Justice essentially conceded that, no, he did not have an FDCA claim, because the scope of employment is read so broadly that that would be within the discretionary function exception. So it's possible he doesn't have an FDCA claim. And I'll reserve my time briefly, but I just want to make one very important point on the FDCA, which is that the question presented in Carlson was, does an FDCA claim? This is the QP in the cert petition, and it's repeated in the first paragraph of Carlson. Does the FDCA displace an Eighth Amendment Bivens claim? And the court held no. And Carlson has been reiterating this good law, including in Abbasi. That was a core part of its holding, that the FDCA is not an adequate remedy. And what defendant is asking this court to do is saying that in Abbasi, although the court nominally upheld Carlson as good law, stated that it was actually critical that in the context of line level law enforcement misconduct, the remedial and deterrence functions of Carlson and Bivens are necessary, that it actually implicitly, through its criticism of Bivens and the Ancien Regime, it implicitly overruled Carlson. And the Supreme Court has repeatedly warned against federal appeals courts overruling Supreme Court precedent on the ground that, well, it seems like maybe they decided differently today. Shouldn't we wait to see what the Supreme Court does since it granted cert in the Bivens case? Yes, so it granted cert and has held oral argument in Egbert v. Boole. I believe it would not be necessary to wait. That's a Fourth Amendment claim, not an Eighth Amendment claim. It's also a First Amendment retaliation claim, which really didn't come up in argument and really doesn't bear on this case. But the Fourth Amendment claim was about immigration. I realize that, but this new court may say something about Bivens that's wrong. Well, Your Honor, I think it's unlikely to bear on this case for the following reason, which is that the two steps of Bivens. First, is this a new context? The focus was because it is a new context because this happened 10 feet from the border by an immigration agent. And the reason for hesitation was because this would interfere with relations between the United States and Canada, analogizing to the court's opinion in Hernandez. So I don't think anything the court would do and, you know, my crystal ball is as cloudy as yours, would bear on this particular case. Because even if they reverse the Ninth Circuit, I don't think it's going to do so. There are no real analogous grounds that would compel a different result here. And I would just say, you know, as a final note, that the third question presented in the Egbert v. Boole cert petition was that Bivens should be overruled entirely. And the court explicitly did not answer on that question. So it certainly seems like the Supreme Court is interested simply in applying Abbasi as we're asking this court to do. Let me ask a question in response to something you said earlier about when I asked, can a prisoner always argue that the use of force violated the Eighth Amendment? And you said, well, these can be disposed of pretty early in the process. Yes, Your Honor. How could this case, for example, be disposed of early in the process, even if it's totally fallacious? Because it's got to go to trial if there's no video that is incontrovertible about what happened and the prisoner says one thing and the guards say the other. This case would have to go to trial, wouldn't it? I, as a prison lawyer, I wish that what you were saying is true, but I regret to inform you that it's not. I think if the prison marshals evidence that what he said not only was not true, but creating any sort of ambiguity about who did what when, the substantive standard is so hard to meet and the defendants are entitled to qualified immunity, that no, I think the odds of this, of a case like this going to trial is actually quite slim. And I'll just note about these procedural protections that, for example, Congress put in. You're well over time, so be very brief. Okay. Well, I will be very brief, and if I could have just a moment on rebuttal, I'd really appreciate it. The Congress took, when it passed the Prison Litigation Reform Act, it took as a background the widespread availability of different remedies. Okay, I think you're going beyond my question, so. Oh, okay, sure. Thank you. Thank you. May it please the Court, Carl Schock representing the United States and the appellee, Brandon Shaw. The Supreme Court has made clear that there are only three recognized Bivens claims, and the extension of the Bivens remedy beyond those three claims is now a disfavored judicial activity and something that the Supreme Court has declined to do now for more than 40 years. And why, in this case, does this case not meet the prerequisites of one of those Supreme Court cases? So that's on the first problem, then, on the new context question. And, frankly, I think that in this case that's a pretty easy question. And Abbasi has said that the new context inquiry is easily satisfied. And the question is whether there are any meaningful differences at all between, in this particular case, Carlson, which is a deliberate indifference claim, and this claim. And I think there are several. And Abbasi talks about a few factors the Court can look at, but it specifically says that those are not exclusive factors. And I think the most obvious difference is just the intuitive one, that there is a completely different factual and legal context between the claim in Carlson, which was about deliberate indifference to medical need, and an excessive force claim that's about an intentional assault. And I think it's important to note here, despite some of the suggestions in the briefing by the plaintiff, the question for this Court isn't whether one of those is worse than the other, or it's not about how bad it might be if, in fact, an assault occurs. The question here, at least at this first prong, is just whether those two are meaningfully different. And I think not only is it intuitive that that's the case, but I think the way that the Supreme Court has talked about the two claims in Whitley v. Albers indicates the difference. The Supreme Court said in that case that the Eighth Amendment applies differently to different kinds of conduct. And in particular, allegations of excessive force present a different context than deliberate indifference claims for several reasons, including the fact that excessive force brings up competing institutional concerns that are not an issue in the deliberate indifference claim. I think the fact that the legal standards are different. Again, deliberate indifference is about knowing disregard. The standard for excessive force is about malice and purpose. Again, the question isn't what's easier or what's worse. The question here is whether they're different. Do you think that that alone is sufficient to keep this case from becoming a Bivens action? I think any one of those differences is sufficient to make this a different context for purposes of the first step of the Bivens analysis. And I do want to address just one point on that. Do you feel you have to go further than the first step to sustain your position in this case? Well, I think that the way the analysis goes is, first, is this a new context? That's the first step. Then the second step is, if this is a new context, should this court extend Bivens to that new context? And that is framed as— What is the new context in this case? The new context, I would say, is an excessive force claim. And so the question is— That's a new amendment claim, isn't it? Yeah, so that goes to what the constitutional right at issue is. And there's certainly some questions of the degree of generality, but I think the easiest way to look at what the claim is is the way the Supreme Court defined the Carlson claim in Abbasi. And that's deliberate indifference to medical needs. That's what the Supreme Court repeatedly called the claim. This clearly is not that. It is under the Eighth Amendment. It is under the Cruel and Unusual Punishment Clause. But the Supreme Court has said that that's not enough. And two specific examples of that. First of all, Hernandez arose under the unreasonable seizure provision, which was the same provision that was at issue in Bivens. That wasn't enough to make them the same context. The other place where that came up is Davis, was about the Fifth Amendment due process clause. That's one of the three recognized Bivens remedies. Schweiker, which is another Supreme Court case where the court declined to extend the Bivens remedy in the kind of Social Security review process. That was also a Fifth Amendment due process claim. In each of those, in Hernandez and Schweiker, even though it was under the same constitutional provision as a prior recognized remedy, those were considered to be different contexts. And so I think here, the constitutional right at issue is the right to be free from deliberate indifference in Carlson, or the right to be free from excessive force here. Those are different constitutional rights, albeit ones that rise under the same constitutional amendment. So I really think the real question here then is whether any special factors counsel hesitation before extending Bivens to this new context. And before I address that question, I do just want to briefly address the waiver point. Because the district court here specifically said that Silva, in his objections to the magistrate recommendation, did not object to that second prong of the Bivens analysis. And at most, he comes back in his reply, and he says, well, I did challenge the adequacy of the BOP administrative remedy program. I think that's a questionable proposition, but even if that's true, the magistrate judge gave a whole bunch of other special factors that counseled against extending the Bivens remedy, and he did not object to any of those. In particular, the magistrate judge said that the FTCA was an alternative remedy that precluded extension of the Bivens remedy. His objection didn't say anything about the FTCA. And so... Counsel, help me out a little bit here, because in the waiver, as I recall, I thought the district court recognized the waiver rule, but in this discretion that said I'm going to go on anyway. I think that what the court said is there were kind of two parts of the opinion. The first part said these are all the things he did not object to. One of those was the second prong, and it said I'm going to review for clear error rather than a kind of full review, and I don't find any clear error. But that does not bind us. The fact that he, the district court, decided to go ahead and resolve on the merits does not bind the court of appeals. They could still apply the waiver rule, right? I think that's right, and I think that it makes particular sense here, because although the district court did go on to address that second prong, which it did note it was doing, even though it didn't need to do it, it didn't address many of these arguments that we're now talking about on appeals, such as, in particular, the availability of the FTCA remedy. The district court opinion just says that the FTCA is an available remedy, but never had this argument that's now coming up about whether or not, in fact, the FTCA is an available remedy. So I think that that's a reason why this court, and this court has required objections to object specifically to alert the district court to the specific issue that's going to be raised on appeal so that the district court can address those issues. Let me ask you your understanding of what the waiver rule means for appeal. I think we've used the language miscarriage of justice or something like that as a ground for overlooking a waiver, and I think more recently we've identified that standard as the same as the plain error standard. Is that your understanding? That is my understanding. That's the Morales-Fernandez case that I cited in my brief, and I think that makes sense, because essentially what it's saying is if we are going to get to these issues that aren't objected to, we're not going to give them extra review. We're going to treat them the same as we treat any unobjected to error. Okay, so our review of the second step, if we get to it, in your view, would be a plain error review. Was the district court's decision on the second prong contrary to clearly established law or something along those lines? I think that's right. I think that's right, and clearly if it's reviewed for plain error, there's no on-point case here, and so there would not be plain error. So I do maintain that waiver argument. I think that allows this court to, if it decides this is a new context, to not even need to go on and address this second prong, but I would now like to address that second prong in the alternative. And on this point, the Supreme Court has emphasized that it's a significant step under the separation of powers principles for a court rather than Congress to create a new constitutional cause of action. And so if there's anything that causes this court to hesitate, any doubt as to whether the court should go forward and do it, the Supreme Court has said not to. And I think it's important here to be clear that this step isn't about the policy question of whether there should be a remedy for the use of excessive force, or whether this is something that the court wants to condone. Obviously it is not, and the Supreme Court noted that in Hernandez when it declined a remedy there. Do you think we should wait for the Supreme Court to decide its new grievance case? I think it makes sense, and I think to the conversation that was going on earlier on that, I think that... I'm going to throw out a prediction here, and I may or may not be right, but I think that the Fourth Amendment question is really about what makes something a new context. I think this is a way easier case than that for all the reasons that I said. But on the First Amendment case, they will have to address what is involved in extending to a new context. And so I think very well the Supreme Court could say more about kind of what is relevant when we're talking about extending to a new context. I would, on this kind of second question, I would say that you don't extend either if there are alternative remedies or if there are any other special factors. And I think we have both of those here, and I'll hit on both quickly if I have time. First of all, in the FTCA remedy, I think there is an FTCA remedy for the wrongful acts of a government employee that includes an assault by correctional officers. Really the only argument here is that Carlson says, well, that's a parallel remedy, not an alternative one. But I think it's important to go back at Carlson and look at the question the court was asking when it said that. And in Carlson, the court was saying that victims of a constitutional violation have a remedy unless that cause of action is defeated by an alternative remedy that Congress has explicitly declared to be a substitute for recovery. And that's the question the court was answering and said, well, Congress hasn't explicitly declared this to be a substitute. But whatever remains of Carlson and concededly the holding does, that clearly is no longer the law. And that is no longer the framework that there's a presumption of a constitutional remedy unless Congress goes out and explicitly declares that to be a substitute. And instead, Abbasi says what the current state of the law is on alternative remedy, which is whether Congress has created any alternative existing process for protecting the injured party's interests. And I think the FTCA here clearly is, to the extent there's any argument about whether this claim could be brought under the FTCA, that claim certainly was not made below or frankly on appeal. The other alternative remedial structure is the BOP administrative remedy program. And in Malesko, the Supreme Court specifically identified the BOP program as an alternative remedial structure. Significantly, the plaintiff in that case was also seeking damages and the court nevertheless found that the BOP administrative remedy program was sufficient. The other argument that's made with respect to the BOP program is that an administrative program doesn't count. But the Supreme Court has relied on administrative processes as an alternative remedy in several cases. Just to cite a few, Bush versus Lucas relied on the civil service remedy program in an employment case. Schweiker versus Chalicki relied on an administrative social security review program. Wilkie versus Robbins relied on administrative review programs. And all three of those cases reached that conclusion even while recognizing that the administrative program doesn't provide complete relief. And so I think that here, certainly there are things that the plaintiff wishes that he could get out of a Bivens claim that he could not get out of a BOP administrative program. But the Supreme Court has said that the alternative remedy doesn't have to be perfectly congruent. And in Malesko it said it's enough that that alternative program provides a means through which the allegedly unconstitutional action can be addressed. Now I want to address a couple other special factors besides the alternative remedies. The first is one the Supreme Court itself has said makes a claim of excessive force different and that's the countervailing considerations and the potential hidden cost to institutional security. It is certainly true that if there is a new claim and a new way for prison guards to be sued involving the use of force, they will have to hesitate and think twice in a context of use of force. Now it may be that Congress decides that that's a good thing. And it may decide that despite the cost that may come into institutional security they want to do that. But that is a policy judgment that should be made by Congress. And the Supreme Court has actually used that as a reason not to extend the Bivens remedy in Bush versus Lucas and the Chappelle case which is also cited in Abbasi, both of which talked about the problem with causing government officials to hesitate before taking actions that need to be taken. And I think we risk that here by creating an excessive force claim. The second special factor is just the fact that Congress has not created a damages remedy for this kind of action despite it not being an unusual type of an allegation. Well, that struck me as a weak argument because they may have assumed that there was a cause of action under Bivens. They may have. And I think the Court could look at it and interpret congressional intent either way. But certainly one interpretation, one the Supreme Court has actually approved of, maybe too strong a word, but has addressed, is that, and I would say, not only with respect to the PLRA, and I would also say that the state of the law at the time of the PLRA, if you go back between Carlson and the PLRA, the Supreme Court was already pulling way back on Bivens. So the idea that Bivens was expansive at the time of the PLRA, I think is not the case. But also in the five years since Abbasi, Congress also hasn't done anything since. And I think it's at least a reasonable interpretation to think that maybe that's because Congress doesn't think there needs to be a remedy. I see that I'm out of time, so unless there are any further questions, the appellee would request that the District Court order be... I'll give Mr. Weiss one minute. You went over significantly before, but there's some new issues that have been addressed. Thank you, Your Honor. I'd be happy first to address any questions that you have. Okay. Just briefly on the firm waiver rule, the test is whether it put the District Court on sufficient notice. It did put the District Court on sufficient notice. It analyzed Step 1, it analyzed Step 2. He's a pro se incarcerated plaintiff writing from a supermax prison. Even on Step 2, which the District Court nonetheless addressed, he spent a paragraph explaining why the administrative remedy was not sufficient and why he needed a remedy from this Court. There was no sandbagging. There was no prejudice. Just quickly on the grievance process and Malesko, it's simply not the case that there was... that the Malesko held that the administrative grievance process was an adequate alternative remedy. That was in the context of a claim against a private prison corporation. And what the Supreme Court was noting was that the grievance process could point attention of problems to the Bureau of Prisons. Thank you, Counsel. Thank you very much. Thank you, Counsel. Case is admitted. Counsel are excused.